### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY**<br>**ONE PARK CIRCLE**<br>**WESTFIELD CENTER, OH 44251**<br><br>           **PLAINTIFF**<br>     v.<br><br>**MIDEA AMERICA CORP.**<br>**300 KIMBALL DRIVE, SUITE 201**<br>**PARSIPPANY, NJ  07054**<br><br>           **DEFENDANT** | CIVIL ACTION NO.:  5:24-cv-127-BJB<br><br>JURY TRIAL DEMANDED |

### COMPLAINT

Plaintiff, Westfield Insurance Company, by and through its attorneys, de Luca Levine, LLC, submits this Complaint and Jury Demand against Defendant, Midea American Corp., and in support thereof avers as follows:

### PARTIES

1. Plaintiff, Westfield Insurance Company ("Plaintiff" or "Westfield") is a corporation organized and existing under the laws of the State of Ohio, whose principal place of business is located at One Park Circle, Westfield Center, OH 44251.

2. At all times relevant hereto, Westfield was duly authorized to engage in the business of (inter alia) property insurance in the State of Kentucky.

3. At all times relevant hereto, Westfield provided property insurance to DEV Hotels, LLC ("DEV Hotels" or "Subrogor") in connection with its property located at 3940 Coleman Crossing Circle, Paducah, KY 42001 (the "subject property"), under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

1

4. In the wake of the fire damage described below, as a result of a claim made on said policy (which was duly paid pursuant thereto), Westfield became subrogated to certain recovery rights and interests of DEV Hotels for monies paid thereunder, including the claims giving rise to the within cause of action.

5. At all times relevant hereto, Defendant, Midea American Corp. ("Midea"), upon information and belief, was a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 300 Kimball Drive, Suite 100, Parsippany, NJ 07054, and was authorized to do business within the State of Kentucky. Midea regularly conducts business in the State of Kentucky.

6. Midea is in the business of, *inter alia,* designing, manufacturing, testing inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce air conditioning units, such as the 2019 Garrison brand Packaged Terminal Air Conditioner Unit, Model No. 2498551 (the "subject air conditioner unit") at issue in this case.

## JURISDICTION

7. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in this district based on 28 U.S.C. § 1391(b)(2) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

9. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

10. Prior to February 8, 2023, Midea designed, manufactured, tested inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce the subject air conditioner unit.

11. On or about February 8, 2023, a catastrophic fire erupted at the subject property as a direct result of a catastrophic failure of the subject air conditioner unit.

12. As a direct and proximate result of the acts and/or omissions of Defendant (as are described more fully below), Subrogor sustained damage to the its real property, as well as additional expenses and harms besides, in an amount in excess of $75,000.00.  As set forth above, Plaintiff is subrogated to Subrogor's recovery rights in connection with this claim.

## **COUNT I – NEGLIGENCE**

13. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

14. Midea owed a duty of reasonable care to purchasers and users and the like with regard to the designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit; and breached said duty.

15. Midea knew, and intended, that the subject air conditioner unit would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which it would be utilized.

16. The aforementioned damages were the direct and proximate result of the negligence and careless conduct and/or acts or omissions of Midea, by and through its employees, agents, technicians, vendors, subcontractors, suppliers and/or servants, more specifically failing to exercise reasonable care described as follows:

    a.    carelessly and negligently failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free air conditioner unit, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b.    carelessly and negligently failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject air conditioner unit free from defects;

    c.    carelessly and negligently failing to properly determine that the subject air conditioner unit was not in a safe condition, and free of all material defects;

    d.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit when it knew, or should have known, that the product was unsafe and unfit for its intended use;

    e.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit when Midea knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

    f.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit that had unreasonably dangerous electrical components that caused the product to catastrophically fail and/or malfunction;

    g.    carelessly and negligently designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous and defective air conditioner unit that Midea knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

    h.    carelessly and negligently failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject air conditioner unit prior to introducing the product into the stream of commerce; and/or

    i.    carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject air conditioner unit, which rendered it defective and unreasonably dangerous.

17. As a direct and proximate result of such conduct, DEV Hotels sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00. As set forth above, Plaintiff is subrogated to DEV Hotels' right of recovery.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – STRICT PRODUCTS LIABILITY

18. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

19. Midea was engaged, in the business of designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce air conditioner units and did, in fact, design, assemble, manufacture, sell, test, distribute and/or market the subject air conditioner unit at issue in this case.

20. The subject air conditioner unit, which was designed, manufactured, tested, inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce by Midea, was not modified, changed, altered or abused by Plaintiff or Plaintiff's Subrogor prior to or during their use.

21. Midea knew and intended that the subject air conditioner unit would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said air conditioner unit would be utilized.

22. Midea designed, manufactured, tested, inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce the subject air conditioner

unit in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

23. Midea designed, manufactured, tested, inspected, assembled, serviced, repaired, installed, marketed, sold and/or distributed into the stream of commerce the subject air conditioner unit in a defective condition, unreasonably dangerous to Subrogor's property.

24. Midea knew, or should have known, that the subject air conditioner unit would, and did, reach the Subrogor without substantial change in the condition in which originally selected and sold.

25. The air conditioner unit was operated without incident in the normal, ordinary and intended matter and purpose at all times prior to February 8, 2023.

26. The fire and damage to Subrogor's property was caused by and/or resulted from the acts and/or omissions of Midea, by and through its agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Midea is liable to Plaintiff, based upon the theory of strict liability for the following reasons:

   a. failing to design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce a properly functioning and defect-free air conditioner unit, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b. failing to properly design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject air conditioner unit in a manner rendering them free from defect;

   c. failing to properly determine that the subject air conditioner unit was not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

   d. designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit when it knew or should have known that the subject air conditioner unit was unsafe and unfit for its intended use;

6

    e. designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce the subject air conditioner unit when it knew or should have known that the subject air conditioner unit would be inadequate for the reasons for which it was purchased;

    f. designing, manufacturing, testing, inspecting, assembling, servicing, repairing, installing, marketing, selling and/or distributing into the stream of commerce a dangerous air conditioner unit, which Midea knew or reasonably should have known exposed users to an unreasonable risk of harm;

    g. failing to properly and adequately design, manufacture, test, inspect, assemble, service, repair, install, market, sell and/or distribute into the stream of commerce the subject air conditioner unit prior to introducing it into the stream of commerce; and/or

    i. failing to provide adequate and sufficient warnings and instructions with respect to the subject air conditioner unit which rendered it defective and unreasonably dangerous.

27. The aforementioned defects or defective conditions existed at the time the subject air conditioner unit left the possession and/or control of Midea.

28. The defective, unreasonably dangerous and unsafe condition of the subject air conditioner unit was a direct and proximate cause of the damages sustained by Plaintiff.

29. For these reasons, Midea is strictly liable to Plaintiff under Section 402A of the Restatement (Second) of Torts, as well as Section 402A of the Restatement (Third) of Torts and/or the applicable statutory and case law of the State of Kentucky.

30. As a direct and proximate result of such conduct, DEV Hotels sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00. As set forth above, Plaintiff is subrogated to DEV Hotels' right of recovery.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES

31. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

32. In light of the defects alleged in the preceding counts, Midea did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which it was intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff's Subrogor (and therefore Plaintiff) had rights to rely upon, and causing damages to it.

33. The subject air conditioner unit was used in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff and its Subrogor have and had complied with all duties reasonably imposable upon them in order to recover on this count.

34. Furthermore, based upon the fact that that the subject air conditioner unit was not free of defects, was not of merchantable quality, and was not fit for the purposes for which intended, Midea breached the aforementioned warranties.

35. DEV Hotels and Plaintiff have performed all conditions precedent to recover based upon such breaches.

36. As a result of the damages directly and proximately caused by said breach(es) of Defendant, DEV Hotels sustained and incurred damage to its real property in an amount to be proven at trial, in excess of $75,000.00. As set forth above, Plaintiff is subrogated to DEV Hotels' right of recovery.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $75,000.00, plus costs incident to this suit, interest, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 22, 2024

    Respectfully submitted,

    **WARD, HOCKER & THORNTON, PLLC**

**BY**:   */s/ Ashley K. Brown*
     Ashley K. Brown
     Ward, Hocker & Thornton, PLLC
     Vine Center
     333 West Vine Street, Suite 1100
     Lexington, KY 40507
     abrown@whtlaw.com
     *Attorney for Plaintiff,*
     *Westfield Insurance Company*